IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| STEPHEN M. TRAMMELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 2:11CV532-MHT |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Stephen M. Trammell brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income under the Social Security Act. Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be reversed.

**STANDARD OF REVIEW**

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145

(11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

After plaintiff's applications were denied at the initial administrative levels, he requested a hearing before an ALJ. After the hearing, the ALJ issued a "step five" decision in which she concluded, *inter alia*, that plaintiff: (1) has "severe" impairments of "degenerative changes of the lumbar spine, degenerative joint disease of the knees, depression, and anxiety" (R. 18); and (2) has the residual functional capacity to perform the exertional requirements of light work, with additional physical limitations and with mental restrictions to "work limited to simple, routine, and repetitive tasks; in a work environment free of fast paced production requirements; involving only simple, work related decisions; with few, if any, work place changes" and occasional interaction with the public and coworkers (R. 24). The ALJ found that plaintiff could not perform his past relevant work (R. 27) but, "based on the [hearing] testimony of the vocational expert," plaintiff can perform

other work that exists in significant numbers in the national economy (R. 28). Thus, the ALJ determined that plaintiff has not been under a disability within the meaning of the Social Security Act from his alleged onset date through the date of the decision. (R. 28-29). The Appeals Council thereafter denied plaintiff's request for review. (R. 1-6).

Plaintiff contends, in part, that the ALJ erred in determining the extent of plaintiff's mental limitations by "improperly acting as both Jud[g]e and mental health professional." (Doc. # 11, p. 3). Plaintiff argues that "the ALJ fails to indicate in her decision the medical authority in which support the limitations she incorporated into her RFC finding. A review of the ALJ's decision reveals that such omission is because the ALJ created the above-referenced limitations completely by herself despite *significant* mental health treatment provided to [plaintiff] by South Central Alabama Mental Health." (Id., pp. 3-4; see also id., pp. 4-9)(error in original).

The Commissioner responds that the ALJ bears the responsibility for assessing a claimant's residual functional capacity under applicable law, and that there is no requirement that the ALJ's RFC finding be based on the assessment of a treating or examining physician in every case. (Doc. # 12, pp. 8-9; see also id., pp. 6-10). The court agrees with the general propositions advanced by the Commissioner. However, the Commissioner ignores plaintiff's argument that the ALJ failed to identify the medical authority on which she relied in drawing her conclusions as to the plaintiff's work-related mental limitations. The Commissioner attempts to explain the ALJ's mental RFC limitations by providing, in her argument, the following *post hoc* rationale:

3

> Courts within the Eleventh Circuit ... have also agreed there is no requirement that the ALJ's finding be based on the residual functional capacity assessment of a treating or examining physician in every case.
>
> In this case, the ALJ followed the regulations, rulings, and Eleventh Circuit authority in considering all the evidence. The ALJ reasonably relied on the objective medical evidence of record; *Dr. Brantley's observation that Plaintiff's attention, concentration, memory, understanding, abstract thinking, thought processing, and thought content were all "normal," and his judgment and insight would "not prevent employment" (Tr. 204); Dr. Rankart's conclusion that Plaintiff's mental impairments caused only mild functional limitations (Tr. 224, 226); and Plaintiff's limited and conservative mental health treatment even post-dating the assessments of Drs. Brantley and Rankart.* The ALJ did not, as Plaintiff claims, disregard evidence of Plaintiff's mental health treatment. She specifically discussed the treatment records in the decision and, in fact, gave Plaintiff the benefit of the doubt by finding him capable of only simple, routine, repetitive tasks, with additional restrictions on production requirements, decisions, changes, and interpersonal interaction (Tr. 24). As such, the residual functional capacity assessment was more than reasonable and should be affirmed.

(Doc. # 12, pp. 9-10)(citations omitted)(emphasis added). The problem confronting the court, however, is that the ALJ does not *herself* explain how she reached her conclusion as to plaintiff's work-related mental limitations, and the court cannot read the ALJ's written decision to include – even implicitly – the rationale now advanced by the Commissioner.

The ALJ refers to the clinical observations of the consultative psychologist, Dr. Brantley, only within her summary of *all* of the evidence she presents under her step two finding. (See R. 18-22 (overall summary); R. 20-21 (summarizing Dr. Brantley's report)). She does not cite those clinical observations again, not even when assessing plaintiff's mental impairments for purposes of her "listings" analysis. (See R. 23-24). Her sole reference to Dr. Brantley's report outside of the overall summary is within the ALJ's credibility assessment – and there, she points to plaintiff's description of his activities of

4

daily living, <u>not</u> to the clinical observations and conclusions the Commissioner now cites. <u>See</u> R. 26 ("The claimant had extensive activities of daily living during the consultative examinations. The claimant indicated no need for personal assistance, care or supervision with any setting for any reason.")(citing Exhibit 4F). While the Commissioner argues that the ALJ relied on the opinion of Dr. Rankart (the non-examining state agency psychologist) that plaintiff's mental limitations are "mild" in assessing plaintiff's RFC, the ALJ's sole reference to Dr. Rankart's opinion falls within her summary of all of the evidence; she does not discuss or cite it thereafter. (<u>See</u> R. 22 (describing Psychiatric Review Technique Form completed by Dr. Rankart); R. 16-29 (entire opinion)). Additionally, Dr. Rankart concluded that plaintiff suffers from no "severe" mental impairment; the ALJ found to the contrary. (<u>Compare</u> R. 18 (listing depression and anxiety among plaintiff's "severe" impairments) and R. 214 (Dr. Rankart's determination that plaintiff has no severe mental impairments). While Dr. Rankart concluded that plaintiff has only "mild" difficulties in maintaining social functioning and in maintaining concentration, persistence or pace (R. 224), the ALJ found that plaintiff has "moderate" difficulties in both of these areas (R. 24). The ALJ's summary of all of the evidence of record falls far short of providing any rationale for the mental limitations she assessed. <u>Cf</u>. <u>Funderburk v. Astrue</u>, 2012 WL 904682 (M.D. Ala. Mar. 15, 2012)("The ALJ's verbatim regurgitation of the medical record does not satisfy the ALJ's obligation to state the reasons for his decision in understandable language, as required by law[.]")(citation omitted).

      The Commissioner further argues, as set forth above, that the ALJ relied on plaintiff's

"limited and conservative mental health treatment even post-dating the assessments of Drs. Brantley and Rankart" in assessing plaintiff's mental limitations (Doc. # 12, p. 10). Here, the Commissioner is correct, in part. In her discussion of her RFC finding, the ALJ points to plaintiff's routine and conservative care generally, citing the lack of hospitalization and emergency room care. (R. 26). As to his mental health treatment in particular, the ALJ follows up this statement with the observation that plaintiff *"has never sought treatment from a specialist; all treatment has been rendered by* a general practitioner and/or *a mental health therapist*." (Id.)(emphasis added). This latter observation is erroneous. Plaintiff's record from South Central Alabama Mental Health includes treatment notes for three evaluations by SCAMH's "Staff Psychiatrist," Dr. Lorna J. Bland; Dr. Bland prescribed and monitored plaintiff's medications. (R. 240-43). Thus, of the three reasons the Commissioner now advances for the mental limitations included in the ALJ's residual functional capacity assessment, only one was mentioned by the ALJ herself, and it depends, in large part, on the ALJ's erroneous reading of the medical record. While the ALJ notes, correctly, that plaintiff was not hospitalized or treated at the emergency room, the court cannot discern from the written decision how that fact leads to or supports the ALJ's finding regarding the functional effect of plaintiff's mental limitations.

If an ALJ fails to provide the court with sufficient reasoning to permit a determination that the ALJ conducted the proper legal analysis, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46. Here, the ALJ found that plaintiff has "moderate" difficulties in social functioning and "moderate" difficulties with regard to concentration, persistence

or pace. (R. 24). While she was careful to note (in boilerplate language) that "[t]he limitation identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments" and that her RFC assessment "reflects the degree of limitation [she] has found in the 'paragraph B' mental function analysis" (R. 24), the ALJ does not explain how the evidence of record supports her translation of plaintiff's moderate difficulties into the mental functional limitations she included in her RFC finding. In the Eleventh Circuit, an ALJ must account for deficiencies in concentration, persistence and pace either implicitly or expressly in her hypothetical question to a vocational expert, or the VE's testimony does not provide substantial evidentiary support for a step five finding of "other jobs" a claimant can perform. Winschel v. Commissioner of Social Security, 631 F.3d 1176, 1180 (11th Cir. 2011)(discussing, with approval, out of circuit cases "reject[ing] the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work"). While it is possible that the ALJ's RFC limitations of "work limited to simple, routine, and repetitive tasks; in a work environment free of fast paced production requirements; involving only simple, work related decisions; with few, if any, work place changes," accounts for plaintiff's moderate difficulties in maintaining concentration, persistence, or pace – deficiencies found by the ALJ to exist – the court simply cannot determine from the ALJ's written decision how she concluded that this is so. See Richter v. Commissioner of Social Security, 379 Fed. Appx. 959, 962 (11th Cir. 2010)(finding that ALJ's step five finding was not supported by substantial evidence where

the ALJ's hypothetical to the VE did not account implicitly for the claimant's moderate deficiencies in concentration, persistence, and pace and because the record included no medical evidence that, "despite these limitations, [the claimant] nevertheless retained the ability to perform simple, repetitive, and routine tasks or unskilled labor"); Walker v. Astrue, 2010 WL 4226485 (M.D. Ala. Oct. 21, 2010)(following Richter and finding the ALJ's hypothetical question to the VE inadequate to sustain the ALJ's step five decision where it limited the claimant to unskilled work with only occasional contact with the public but did not incorporate the claimant's moderate limitation in concentration, persistence and pace); see also Jarrett v. Commissioner of Social Security, 422 Fed. Appx. 869, 871-72 (11th Cir. 2011)(case distinguished from Winschel and Richter because: (1) the ALJ's hypothetical question asked the VE to assume an individual who could concentrate for brief periods of time; and (2) the record included opinions of one non-examining consultant that – despite her moderate difficulties with concentration, persistence, or pace – the claimant could follow simple instructions, complete simple tasks, make decisions, avoid hazards and, also, the opinion of another non-examining consultant that the claimant was able to understand, remember, and carry out simple tasks, despite the moderate limitation).  Because the ALJ failed to explain how she ascertained the work-related limitations resulting from plaintiff's mental health impairments – and it is not otherwise obvious from the record or the ALJ's decision – the court cannot determine whether the ALJ applied the correct legal analysis or whether her step five decision is supported by substantial evidence.

**CONCLUSION**

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that the Commissioner's decision be REVERSED, and that this action be REMANDED to the Commissioner for further proceedings.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties to this action.  The parties are DIRECTED to file any objections to this Recommendation on or before July 23, 2013. Any objections filed must identify specifically the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  Resolution Trust Co. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, this 9th day of July, 2013.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE